UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>SFR INVESTMENTS POOL 1, LLC, et al.,<br><br>Defendants. | Case No. 2:16-cv-02257-JCM-CWH<br><br>**ORDER** |

Presently before the court is defendant SFR Investments Pool 1, LLC et al.'s ("SFR") motion for summary judgment. (ECF No. 67). Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") filed a response (ECF No. 71), to which SFR replied (ECF No. 73).

Also before the court is Wells Fargo's motion for summary judgment. (ECF No. 68). SFR filed a response (ECF No. 70), to which Wells Fargo replied (ECF No. 72).

Also before the court is cross defendant Transunion Settlement Solutions' ("Transunion") motion to set aside entry of default. (ECF No. 74). Wells Fargo has not filed a response and the time to do so has passed.

**I.    Facts**

This action arises from a dispute over real property located at 1741 Choice Hills Drive, Henderson, Nevada 89012 ("the property"). (ECF No. 1).

Theresa Wingender purchased the property on July 6, 2001. (ECF No. 68-2). Wingender financed the purchase with a loan in the amount of $562,500.00 from World Savings Bank, FSB ("WSB"). (ECF No. 68-1). WSB secured the loan with a deed of trust, which names WSB as both the lender and beneficiary, and Golden West Savings Association Service Company as the

trustee. *Id*. In December 2007, WSB changed its name to Wachovia Mortage, FSB ("Wachovia"). *Id*. On November 1, 2009, Wachovia merged into Wells Fargo. *Id*. Thus, Wells Fargo has been at all times relevant to this action the been the beneficiary of the deed of trust.

On August 16, 2011, Foothills at MacDonald Ranch Master Association ("Foothills"), through its agent defendant Homeowner Association Services, Inc. ("HAS"), recorded a notice of delinquent assessment lien ("the lien") against the property for Wingender's failure to pay Foothills in the amount of $19,454.00. (ECF No. 68-2). On August 29, 2012, Foothills recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $22,129.69 as of August 29, 2012. *Id*.

On September 6, 2012, Foothills mailed copies of the notice of default and election to sell to WSB at two different addresses specified in the deed of trust: (1) 1901 Harrison Street, Oakland, California 94612; and (2) P.O. Box 859548, San Antonio, Texas 78265. *Id*. Wells Fargo acknowledges receiving the copy sent to the Oakland address. (ECF No. 68).

On August 12, 2013, Foothills recorded a notice of foreclosure sale against the property, stating that a payment of $33,877.90 would be necessary to satisfy the lien. (ECF No. 68-2). On August 8, 2013, Foothills mailed copies of the notice of foreclosure sale to WSB at both the Oakland and San Antonio addresses. *Id*. However, Wells Fargo denies ever receiving copies of the notice of foreclosure sale. (ECF No. 68).

On September 26, 2013, Foothills sold the property in a nonjudicial foreclosure sale to SFR in exchange for $56,000.00. (ECF No 68-1). On January 14, 2014, SFR recorded the deed of foreclosure with the Clark County recorder's office. *Id*.

On September 26, 2016, Wells Fargo filed a complaint, alleging six causes of action: (1) declaratory relief under the takings clause of the Fifth Amendment against all defendants; (2) declaratory relief under the due process clauses of the Fifth and Fourteenth Amendments against all defendants; (3) wrongful foreclosure against all defendants; (4) violation of NRS 116.1113 *et seq*. against Foothills and HAS; (5) unjust enrichment against Foothills and SFR; and (6) quiet title against all defendants. (ECF No. 1).

Now, SFR and Wells Fargo have filed cross-motions for summary judgment, requesting

2

that the court resolve whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 67, 68).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party

to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

Before the court are several motions. First, the court will set aside the entry of default against Transunion as the court can reasonably resolve this case on the merits. Second, the court will resolve the cross motions for summary judgment in favor of SFR because Chapter 116 is not unconstitutional and Wells Fargo received adequate notice of the foreclosure sale.

    *a.    Entry of default*

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause . . ." Fed. Ru. Civ. P. 55(c). To determine if good cause exists, the court considers: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quotes and citation omitted).

4

"[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id*.

While the court considers the same factors prior to vacating an entry of default as it would for a default judgment, the test is less stringent when the court has not entered default judgment. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). Indeed, "[t]he court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986).

In considering the three relevant factors, the court finds that good cause exists to set aside the clerk's entry of default (ECF No. 69). Transunion was not aware of this action until July 2018 due the mistakes of a third party, Transunion does not possess any interest in the property, prejudice is unlikely to result, and Wells Fargo has not opposed the motion to set aside entry of default. *See* LR 7-2(d) ("[T]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."). Further, there is a strong policy favoring the adjudication of claims "upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Accordingly, the court will grant Transunion's motion to set aside the clerk's entry of default.

  *b. Cross motions for summary judgment*

SFR and Wells Fargo dispute whether the deed of trust encumbers the property. (ECF Nos. 67, 68). Because Wells Fargo has failed to provide sufficient grounds to set aside the foreclosure sale, the court will grant SFR's motion for summary judgment and deny Wells Fargo's motion for summary judgment.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013)

(citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

NRS 116.3116 *et seq.*[1] ("Chapter 116") allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

6

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 68-1, 68-2). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 68-1); *See id*. at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)– (3).

7

Wells Fargo contends that the foreclosure sale did not extinguish the deed of trust for two reasons: (1) Foothills foreclosed on the property pursuant to a facially unconstitutional statute, and (2) Foothills did not provide Wells Fargo with adequate notice. (ECF No. 68).

    *i.*    *Constitutionality of Chapter 116*

Wells Fargo argues that the court should grant summary judgment in its favor because, under *Bourne Valley*, Foothill foreclosed pursuant to a facially unconstitutional state statute. (ECF No. 53); *see Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). However, Wells Fargo's reliance on *Bourne Valley* is misguided.

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS 107.090, which requires notice of default to any person with a subordinate security interest. *Id.*

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id.* (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id.*

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final

8

authority to interpret, and, where they see fit, to reinterpret the states' legislation."). Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Foothills foreclosed on the property pursuant to a constitutional statute.

  *ii.*  *Due process*

Wells Fargo argues that Foothills did not provide notice of the foreclosure sale in compliance with the due process clauses of the Fifth and Fourteenth Amendments. (ECF No. 68). The court disagrees.

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 3:15-cv-00390-RCJ-VPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Wells Fargo confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, Foothills provided reasonably calculated notice when it mailed multiple copies of the notice of default and notice of foreclosure sale to Wells Fargo at two different addresses. (ECF No. 68-2). Further, Wells Fargo admits receiving a copy of the notice of default, which was sufficient to apprise Wells Fargo of the foreclosure sale and afford it an opportunity to present objections. (ECF No. 68). Therefore, Wells Fargo's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

9

**IV. Conclusion**

In light of the foregoing, SFR is entitled to judgment as a matter of law against Wells Fargo.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that SFR's motion for summary judgment (ECF No. 67) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Wells Fargo's motion for summary judgment (ECF No. 68) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Transunion's motion to set aside entry of default. (ECF No. 74) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED THIS 29th day of October 2018.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE
